IN THE MARION COUNTY SUPRERIOR COURT
CIVIL DIVISION:



| | |
|---|---|
| STATE OF INDIANA | § |
| COUNTY OF MARION | § |
| | |
| TRACEY HARDWICK as Administrator, | § |
| of the ESTATE OF BRIAN HEGWOOD | § |
| Plaintiff, | § |
| v. | § |
| | § |
| MARION COUNTY SHERIFF'S | § CAUSE NO. : |
| DEPARTMENT AKA SHERIFF KERRY | § |
| FORESTAL; WELLPATH AKA | § |
| CORRECT CARE SOLUTIONS, | § |
| LAURA ARMSTRONG, ROSA | § |
| HODGSON, JENNIFER GOSSETT, | § |
| MARCEL ROHANA, ERICA MORRIS, | § |
| LAUREN KANNAPEL, JENNIFER | § |
| RILEY, UNKNOWN SHERIFF | § |
| DEPUTIES, AND | § |
| UNKNOWN CCS EMPLOYEES | § |
| in their | |
| individual and official capacities, | |
| Defendants. | |

++

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Nature of the Case**

1. This is an action for damages brought by Tracey Hardwick on behalf of the Estate of Brian Hegwood against the Marion County Sheriff's Department (AKA Sheriff Kerry Forestal, Correct Care Solutions, Laura Armstrong, Rosa Hodgson, Jennifer Gossett, Marcel Rohana, Erica Morris, Lauren Kannapel, Jennifer Riley, and other unknown Deputies, Nurses, and other jail employees in their in individual and official capacities. The Defendants recklessly and indifferently failed to provide Hegwood proper medical treatment and accommodations in violation of the 4th, 8th, and 14th Amendments to the United States Constitution, and have

committed the Indiana torts of negligence and/or caused the wrongful death of Brian Hegwood.

## Jurisdiction and Venue

2. Marion County is the county of preferred venue under Indiana Rules of Trial Procedure 75(A), as the allegations within this complaint arise out of conduct that occurred within Marion County, Indiana.

## Parties

3. Tracey Hardwick ("Hardwick") is a citizen and resident of the State of Indiana, and at all times relevant to this action resided within the geographical boundaries of the Southern District of Indiana. Hardwick is the administrator of the estate for her son Brian Hegwood.

4. The Marion County Sheriff's Department ("MCSD") is located in the county seat of Marion County, which is in Indianapolis, Indiana. The Sheriff's Department is responsible for operating the Marion County Jail ("MCJ"), which is also located in Indianapolis, Indiana. Kerry Forestal is the elected Sheriff for Marion County, Indiana.

5. Defendant Correct Care Solutions, LLC ("CCS") is a domestic corporation headquartered in Tennessee which operates as a for-profit foreign corporation in Indiana, and was, at the time of the events giving rise to plaintiff's claims, providing medical care to inmates in the MCJ.

6. Laura Armstrong, Rosa Hodgson, Jennifer Gossett, Marcel Rohana, Erica Morris, Lauren Kannapel, and Jennifer Riley were individuals employed and/or contracted by CCS and/or MCSD responsible for the health and safety of Brian Hegwood. These individuals are sued in their individual and official capacity.

7. Unknown Nurses, Employees, and Deputies, are employees of CCS and MCSD that were employed by those entities at all times pertinent to this complaint. These individuals are responsible for the health and safety of the inmates at MCJ. All of these individual were responsible for the health and safety of Brian Hegwood.

### Conditions Precedent

8. All conditions precedent to the institution of this lawsuit have been fulfilled.

### Factual Allegations

9. CCS had a contract with MCSD to provide medical services to its inmates at the MCJ.

10. The contract between CCS and MCSD was in effect between September 29, 2019 and October 10, 2019.

11. Laura Armstrong, Rosa Hodgson, Jennifer Gossett, Marcel Rohana, Erica Morris, Lauren Kannapel, and Jennifer Riley were all employed and/or contracted by CCS and/or MCSD during the period of time between September 29, 2019, and October 13, 2019.

12. In recent years, heroin and opioid addictions has sky rocketed across the nation, including in southern Indiana, and this fact has been widely reported and discussed in the national, state, and local news media.

13. It is well-known that heroin withdrawal, and drug withdrawal in general, can cause serious health issues, including death if not properly monitored and treated.

14. It is also well-known that users of intravenous drugs can often have infections related to the use of needles.

15. It is common for prison and jail staff at the federal, state, and local levels to encounter inmates who suffer from heroin withdrawal while in custody. In response, many facilities, including those administered by the Federal Bureau of Prisons, have implemented policies,

procedures, and training specifically designed to monitor and protect these inmates. Others, including the MCJ, have done little, if anything to address the problem.

16. On or about September 27, 2019, Hegwood was arrested on a warrant, and processed into the custody of the MCSD.

17. On October 4, 2019, Hegwood was sentenced to twenty jails in day for a probation violation under cause number 49G25-1712-F6-047594. Hegwood had been on probation for unlawful possession of a syringe, and he was violated for among other things a positive drug test. (See Exhibit A).

18. Hegwood's executed sentence was to run until October 13, 2019.

19. Hegwood was sentenced in court during the morning session, and then remanded back into the custody of the MSD. He was then transported from the City-County building to the MCJ.

20. Hegwood was a user of opiates, and the MCSD was aware of this fact.

21. Shortly after being remanded back into the custody of the MCSD, Hegwood began showing obvious signs of mental and physical impairment.

22. Hegwood became dehydrated and developed blisters and bleeding in his mouth.

23. Hegwood called his mother, Tracy Hardwick, and requested that she provide him with something to drink.

24. Hardwick tried to purchase Hegwood food and beverage, but the MCSD never provided Hegwood with those items.

25. Eventually, Hegwood, became so weak, that he defecated himself, and was left to lay in his own feces.

26. Hegwood's condition was such that it was clear and obvious that he needed immediate medical attention.

27. Despite the obvious signs that Hegwood needed medical attention, he did not receive adequate medical care from any employee from the CCS and/or MCSD.

28. During the course of his incarceration, the following individuals were in a position to help Hegwood and were aware or should have been aware of his need for proper medical treatment: Laura Armstrong, Rosa Hodgson, Jennifer Gossett, Marcel Rohana, Erica Morris, Lauren Kannapel, and Jennifer Riley

29. There are other MCSD and CCS employees that may have came into contact with Hegwood during his incarceration, but there names are currently unknown to Hegwood.

30. At some point during his incarceration at the Marion County Jail, Hegwood was transferred to the jail's medical wing.

31. Despite being transferred to the medical wing, he was provided with inadequate medical treatment.

32. CCS failed to properly assess and treat Hegwood in multiple ways and failed to comply with the applicable standard of care.

33. CCS failed to take basic assessments of Hegwood's vital signs.

34. CCS failed to properly take samples and/or test Hegwood's blood.

35. CCS failed to properly check Hegwood's body for signs of infection.

36. CCS failed to provide Hegwood with any antibiotics.

37. CCS failed to assess Hegwood for dehydration.

38. CCS failed to provide Hegwood with appropriate IV treatments.

39. Hegwood was released from the custody of the MCSD at the conclusion of his sentence on October 13, 2020.

40. Hegwood was so sick that he was transported by an ambulance to Eskenazi Hospital.

41. Hegwood was admitted to the Hospital, and was noted to have rashes on his body, sores in his mouth, and he was emaciated.

42. These symptoms would be obvious to medical and lay person alike that Hegwood was in need of immediate medical assistance. Failing to offer assistance to Hegwood, or to notice these symptoms constitutred wanton disregard, incompetence, and/or reckless indifference.

43. Diagnostic tests and assessments done at Eskenazi indicated that Hegwood was having significant difficulties with breathing, and that he had issues with kidneys, blood pressure, and MRSA.

44. All of these diagnostic tests and assessments could have been conducted by CCS while Hegwood was incarcerated, and/or the MCSD could have transported Hegwood to Eskenazi prior to the conclusion of his sentence.

45. MCSD has an arrangement with Eskenazi Health, wherein inmates can be transported from Marion County Jail to Eskenazi Hospital to receive treatment while still in custody.

46. CCS and MCSD did not transport Hegwood to Eskenazi during the course of his custodial sentence.

47. Defendants MCSD and CCS follow a policy or practice of removing inmates with serious medical needs and/or drug withdrawal symptoms from group cell blocks to single cells and as a consequence do not provide inmates with adequate medical assessments or treatments.

48. Hegwood had an obvious medical need.

49. The MCSD, CCS, and their respective staffs who interacted with Hegwood should have insured that he got proper medical treatment.

50. Defendants individually and collectively failed to take reasonable measures to provide treatment and assessment for Hegwood's serious medical needs.

51. Hegwood died at Eskenazi Hospital on October 20, 2019.

52. Hegwood's wrongful death was the result of the inaction, negligence, deliberate indifference, and/or failures of the MCSD, CCS, and their respective employees.

53. The actions and inaction of the (known and unknown) individual defendants were conducted within the scope of their employment or contract with CCS and the MCSD respectively.

54. The actions and inactions of the defendants were taken under color of state law.

### Statement of Claims

### Count I – § 1983 claim, Violation of the Fourth, Eighth, and Fourteenth Amendment

### (All known and unknown individual Defendants)

55. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

56. Plaintiff was in the lawful custody of the MCSD.

57. Defendants were aware that Plaintiff was in need of obvious medical treatment at the jail.

58. Defendants were reckless and deliberately indifferent in the manner Plaintiff was deprived of adequate medical treatment.

59. Plaintiff had the right to be free from unreasonable search and seizures prior to his conviction under the 4th Amendment.

60. Plaintiff has the right to be free from cruel and unusual punishment under the 8th and 14th Amendments after he was convicted and sentenced.

61. Plaintiff's death and suffering was the result of the Defendants' reckless and deliberately indifferent treatment of the Plaintiff.

62. Plaintiff's need for medical attention was clear and obvious.

63. Defendants were all government actors, who were acting under the color of state law as to all times relevant to the complaint.

64. The Defendants were obligated to provide medical treatment and assessment to the Plaintiff.

65. The Defendants failed to provide proper medical treatment and assessment to the Plaintiff.

66. This failure to provide medical treatment and assessment was intentional, reckless, and/or indifferent.

67. The failure to provide medical treatment and assessment to the Plaintiffs is a violation of their 8th Amendment Rights to be free from cruel and unusual punishment.

68. By way of this claim, Plaintiffs are seeking all available compensatory and punitive damages, remedies, and just relief, including recovery of attorney fees and costs.

### Count II- Policy Procedure and Practice, 42 USCA sec. 1983 (MCSD and CCS)

69. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

70. Plaintiff's death was caused by the failures of MCSD and CCS to properly supervise, train, and/or to enforce its policies to identify, monitor, and treat inmates suffering from opiate withdrawals, needle infections, and identifying signs of MRSA.

71. The failure by CCS and MCSD to properly implement policy to monitor and care for inmates with opiate withdrawal falls under a *Monell* claim, and is a violation of Federal Law.

72. The failure by CCS and MCSD to properly implement policy and training to identify and/or approve inmates in need of medical care to Eskanazi Hospital falls under a *Monell* claim, and are a violation of Federal Law.

73. CCS' and MCSD's pattern of failing to identify and/or approve inmates in need of medical care to Eskanazi Hospital falls under a *Monell* claim, and is a violation of Federal Law.

74. Due to either an express policy or a widespread practice and custom, MCSD and CCS (who were acting under the color of state law), to not properly treat, monitor, and/or transport inmates, who were in need of urgent medical treatment for MRSA and/or conditions related to the use of opiates, the Plaintiff's rights under the 4th, $8^{th,}$ and 14th amendments were violated when he was not provided appropriate medical care.

**Count III –State Law Claims of Negligence/Wrongful Death against all Defendants**

75. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

76. All Defendants owed Plaintiff a duty of care.

77. Defendants were negligent in their failure to provide proper medical care to the Defendant.

78. The conduct of the individual defendants was wanton, knowingly, and/or reckless.

79. MCSD and CCS are liable for the actions of their jail personnel and contracted entities committed within the scope of their employment, to the extent that any officers or employees were purportedly acting in accordance with policies, procedures or practices that are asserted in defense of their actions.

80. MCSD and CCS are vicariously liable for the actions of its employees.

81. MCSD and CCS have a duty to provide adequate medical care to inmates at the MCJ.

82. Defendants failed to comply with the applicable standard of care to the Plaintiff, by failing to provide him proper oversight and care.

83. The failures by the Defendant caused the wrongful death of the Plaintiff.

84. By way of this claim, Plaintiff is seeking all available & appropriate damages, remedies, and just relief.

## Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully pray for relief and judgment, as follows:

    I.   Awarding compensatory damages in favor of Plaintiff against all Defendants jointly and severally, for all damages sustained as a result of Defendants' wrong doing, in an amount to be proven at trial.

    II.   Awarding punitive damages in favor of Plaintiff against all individual Defendants jointly and severally, for all damages sustained as a result of Defendants' wrong doing, in an amount to be proven at trial.

    III.   Awarding Plaintiffs their reasonable costs and expenses incurred in this action, including attorney fees and expert fees; and

    IV. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

***/s/ Charles C. Hayes***

Charles C. Hayes 24220-53
Jane H. Ruemmele, 6555-49
HAYES RUEMMELE, LLC
22 E. Washington Street Ste. 610
Indianapolis, IN 46204
317-491-1050, FAX 317-491-1043
Charles@chjrlaw.com
Jane@chjrlaw.com

_____ /s/ *Steven P. Lammers*, 26443-64
Mandel Rauch & Lammers, P.C.
704 Adams Street, Suite F
Carmel, IN 46032
(317) 581-7440
slammers@mhmrlaw.com

## JURY TRIAL DEMAND

Dennis respectfully request that this matter be tried by a jury, pursuant to the Federal rules of Civil procedure 38 (b) on all issues.

Respectfully submitted,

***/s/ Charles C. Hayes***

Charles C. Hayes24220-53
Jane H. Ruemmele, 6555-49
HAYES RUEMMELE, LLC
22 E. Washington Street Ste. 610
Indianapolis, IN 46204
317-491-1050, FAX 317-491-1043
Jane@chjrlaw.com

_____/s/ *Steven P. Lammers*, 26443-64
Mandel Rauch & Lammers, P.C.
704 Adams Street, Suite F
Carmel, IN 46032
(317) 581-7440
slammers@mhmrlaw.com